UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONI CRANDLE,

    Plaintiff,

v.                                                             Case No. 1:14-cv-393
                                                           Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                        /

## **OPINION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

        Plaintiff was born on September 23, 1963 (AR 351).[1] She alleged a disability onset date of September 8, 2006 (AR 351). Plaintiff completed the 8th grade and had previous employment as a mail room worker, waitress and bartender (AR 328). Plaintiff identified her disabling conditions as a shoulder injury, pinched nerve in the neck (disc C6 and 7), inflamed sciatic nerve, shooting pain in right hip and down leg, degenerative disc disease, neck pain, muscle spasms, stiff neck pain and weakness in the shoulder, hip pain that shoots down the legs, lack of range of motion, stiffness, pain, fatigue, degenerative disc disease in the neck and back, arthritis in the neck

---

[1] Citations to the administrative record will be referenced as (AR "page #").

and back, pinched sciatic nerve, nerve in bottom of foot hurts, depression, torn rotator cuff, and attention deficit disorder (ADD) (AR 327).

On October 27, 2010, an Administrative Law Judge (ALJ) James F. Prothro, II, reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 140-49). The Appeals Council vacated the decision and remanded it back to the ALJ on April 28, 2012 (AR 156-57). On remand, the ALJ was to reconsider plaintiff's residual functional capacity (RFC) without reference to Exhibit 11F (the findings of the State disability examiner), to account for plaintiff's provisional diagnosis of degenerative disc disease, to give further consideration to plaintiff's impairments at step two of the sequential evaluation, to give further consideration to plaintiff's maximum RFC, and if warranted, to obtain supplemental evidence from a vocational expert (VE) to clarify the effect of the assessed limitations on plaintiff's occupational base (AR 29-30, 156-57). On remand, ALJ Prothro reviewed plaintiff's claim *de novo* and entered a decision denying benefits on January 4, 2013 (AR 29-40). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based

upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent

> her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 8, 2006, and that she met the insured status requirements of the Social Security Act through September 30, 2009 (AR 32). At step two, the ALJ found that plaintiff had severe impairments of: "[d]egenerative disc disease (disorders of) the lumbar and cervical spine; left shoulder rotator cuff injury; s/p rotator cuff

surgery; left knee meniscus injury, with s/p surgery same; myofascial pain, with provisional diagnosis of fibromyalgia; and chronic mild depression (AR 32). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 32).

The ALJ decided at the fourth step that plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and/or carry 20 pounds occasionally and 10 pounds frequently; limited to frequent overhead reaching bilaterally; no further restrictions on push, pull, or use of the hands and feet; can stand and/or walk for a total of 2 hours during an 8-hour workday; can sit for 6 out of 8 hours during a workday; limited to performing one and two step tasks; avoid fast paced work, or jobs where she has a strict job production quota; as shown in prior hearing order no climbing ladders, rope, scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; retains ability to understand, remember and carry out short, simple instructions within the limitations set forth herein.

(AR 32).

The ALJ also found at the fourth step that plaintiff was capable of performing her past relevant work as a mail clerk, work which does not require the performance of work-related activities precluded by plaintiff's RFC (AR 38). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 8, 2006 (the alleged onset date) through January 4, 2013 (the date of the decision) (AR 39-40).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. The ALJ committed reversible error by failing to properly assess and incorporate the medical opinions of plaintiff's treating physicians.

Plaintiff contends that the ALJ failed to properly assess the opinions of two treating physicians, Lori J. Holstege, M.D. (plaintiff's psychiatrist) (dated September 2, 2010 and identified

as Exhibit 28F) (AR 783-85) and Robert Gunnell, M.D. (plaintiff's current primary care physician) (signed November 14, 2012 and identified as Exhibit 41F) (AR 845-48). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2)

and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### 1. Dr. Holstege

The ALJ's evaluation of the opinion evidence is difficult to follow. In addressing the listed impairments in step three, the ALJ states that plaintiff submitted signed statements from Dr. Gunnell and Dr. Holstege and that:

> If the medical source statements from Dr. Gunnell and/or Dr. Holstege were assigned significant weight, the claimant would be found disabled under the provisions. However, *as the undersigned has detailed with respect to Dr. Holstege*, and will document with respect to Dr. Gunnell, a number of reasons exist for not adopting these overly restrictive medical source statements.

(AR 33) (emphasis added). The ALJ's January 4, 2013 decision did not address Dr. Holstege's opinion. Rather, this decision drew some of its analysis of Dr. Holstege from the pre-remand decision entered on October 27, 2010 ("[t]he findings of Dr. Holstege are without merit, as detailed in my prior hearing order") (AR 32-33). In summary, the ALJ's review of Dr. Holstege's opinion is fragmented and difficult to follow, in part because the ALJ incorporates portions of his analysis from the earlier decision which was vacated by the Appeals Council. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the Court cannot trace the ALJ's path of reasoning with respect to Dr. Holstege's September 2, 2010 opinion. Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Holstege's opinion.

### 2. Dr. Gunnell

The ALJ's main criticism of Dr. Gunnell is that the doctor did not treat plaintiff until 2011, but rather relied on the notes of another doctor to establish that plaintiff suffered functional limitations in 2009:

> Dr. Gunnell has attempted to convey his opinion that the claimant has been incapacitated since prior to September 2009. The clinical notes show that Dr. Gunnell did not meet with the claimant until 2011, and he relies upon treatment notes from another source within his practice. The doctor's opinion contrasts sharply with the other evidence of record, which renders it less persuasive.
>
> An evaluation of these clinical notes will reveal that the claimant has never discussed many of these listed limitations with Dr. Gunnell. For example, while Dr. Gunnell's sworn statement refers to her only having the stamina or strength to work 1 to 1.5 hours consecutively, this is only displayed within the clinical notes when the claimant brings up the possibility. Dr. Gunnell is overly reliant upon her subjective allegations, and these do not appear within the clinical notes to the extent that Dr. Gunnell mentions them within his sworn statement.

(AR 33).

The Court concludes that Dr. Gunnell had a basis for such opinions because he relied on the treatment notes of plaintiff's prior physician at the same medical practice, Dr. Stan Haegert (AR 845). Dr. Gunnell stated that he had access to Dr. Haegert's notes and records regarding plaintiff's previous treatment (AR 845). In this case, it is reasonable for Dr. Gunnell to rely on the opinions of another physician in the same medical practice because he continued plaintiff's care after Dr. Haegert's departure from the practice. *See Guyaux v. Commissioner of Social Security*, No. 13-12076, 2014 WL 4197353, at *16 (E.D. Mich. Aug. 22, 2014) (stating that it is reasonable and logical to consider the opinions of treating physicians from the same practice together as they involved a "continuum of care" provided to the plaintiff over a period of time). Accordingly, this

matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Gunnell's opinion.

### B. The ALJ committed reversible error by failing to evaluate plaintiff's impairments under medical listing 1.04 A

Plaintiff contends that she meets the requirements of Listing 1.04A, 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

Here, plaintiff contends that she meets the requirements of Listing 1.04 A, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04 A.

Plaintiff states that she has been diagnosed with conditions which are encompassed within Listing 1.04, including degenerative disc disease of the cervical, thoracic, and lumbar spine, stenosis of the cervical spine, and spondylosis of the cervical and lumbar spine (AR 542-43, 545-46, 739-40, 833, 840). Plaintiff's Brief at p. ID# 904.

The ALJ concluded that plaintiff did not meet the requirements of Listing 1.04:

> As discussed within the October 28, 2010 hearing order, the claimant does not meet or equal listing section 12.04 for the mild depression. Listing sections 1.02, 1.03, 1.04, 1.05, 1.06 and 1.07 were reviewed fully, and analyzed using the prior clinical records at exhibit 1F to 29F, as well as the new material at exhibits 30F to 42F.
>
> *Regardless of the cause of the musculoskeletal impairment, the functional loss for purposes of each listing here is defined as the inability to ambulate effectively on a sustained basis for any reason, inlcuding [sic] pain associated with the underlying impairment.* Another test to utilize is evaluating whether the individual is unable to perform fine and gross movements effectively on a sustained basis. In this case, the claimant alleges that she is unable to realize any meaningful relief from her pain medications. She submitted signed statements from Dr. Gunnell and Dr. Holstege. If the medical source statements from Dr. Gunnell and/or Dr. Holstege were assigned significant weight, the claimant would be found disabled under the provisions. However, as the undersigned has detailed with respect to Dr. Holstege [i.e., with respect to plaintiff's mental impairments], and will document

10

> with respect to Dr. Gunnell, a number of reasons exist for not adopting these overly restrictive medical source statements.
>
> The claimant's musculoskeletal impairments, pain, and the provisional diagnosis of fibromyalgia do not cause restrictions greater than those set forth in my revised residual functional capacity summary. The claimant is coping with a degree of pain, and she does have restrictions in terms of carrying, lifting and bending. However, the records detail that her medical issues are not as debilitating as she expresses. She also receives more relief from pain medications, and the clinical documents from Dr. Gunnell illustrate this. She is able to ambulate effectively, climb steps, use the arms for pushing, pulling, lifting, carrying, and fine/gross manipulation to the extent expressed within my RFC in this present hearing order.

(AR 32-33) (emphasis added).

Plaintiff contends that the ALJ erred by concluding that the inability to ambulate effectively and to perform fine and gross movements effectively is a requirement for Listing 1.04 A. Plaintiff's Brief at pp. ID## 904-05. Defendant admitted that "the ALJ's step three analysis was lacking" :

> He found that Plaintiff did not meet Listing 1.04 because she did not have an inability to ambulate effectively. (Tr. 32-33). The finding however, only disposes of Listing 1.04C -- *1.04A says nothing about ambulation*.

Defendant's Brief (docket no. 12, PageID #914). In short, the ALJ's step three evaluation is based upon the faulty premise that the "inability to ambulate effectively" is a requirement of Listing 1.04A. Defendant invites the Court to review the medical record and other portions of the ALJ's decision to rehabilitate the ALJ's erroneous determination. *Id.*, PageID #914-16. However, it is not for this Court to determine whether plaintiff's condition meets Listing 1.04A. *See Brainard*, 889 F.2d at 681 (this Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate whether plaintiff has established the requirements for Listing 1.04 A.

### C. The ALJ's assessed RFC is not supported by substantial evidence.

The gist of plaintiff's claim is that the ALJ did not follow the Appeals Council's order on remand with respect to evaluating her RFC (i.e., "[t]he ALJ paid lip service to the order of the Appeals Council by adding [plaintiff's] spine conditions to her list of severe impairments at step 2; however, he failed to include any substantive limitations, based on these impairments, to her RFC"). *See* Plaintiff's Brief at p. ID# 906 (docket no. 11). Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision. Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process. *See Brown v. Commissioner of Social Security*, No. 1:08-cv-183, 2009 WL 465708 at *6 (W.D. Mich. Feb. 24, 2009). *See also, Bass v. Astrue*, No. 1:06-cv-591, 2008 WL 3413299 at *4 (M.D.N.C. Aug. 8, 2008) ("[t]he Court does not review internal, agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order"). Accordingly, plaintiff's claim of error should be denied.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Holstege's opinion, to re-evaluate Dr. Gunnell's opinion, and to re-evaluate whether plaintiff has established the requirements for Listing 1.04A. A judgment consistent with this opinion will be issued forthwith.

Date: September 22, 2015       /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge